Hale, J.
This case brings before us a record of the court of common pleas for review. In one feature of the case, it presents a question of considerable importance that may be involved in other cases.
It seems that on December 23, 1892, Jerrard Barker delivered to the Cleveland, Canton & Southern Railroad Company at Baltic, in this state, a car-load of lumber, to be shipped to The J. E. Seiberling Company at Akron. The lumber in due time reached Akron, having been transferred at Kent to the New York, Lake Erie & Western Railroad Company. The car was placed upon a side-track convenient for unloading by the consignee, and the company notified that the freight was there for it. Mr. Seiberling, the manager, on investigation *594 found that the company had ordered no lumber from Baltic, and informed the Railroad Company that there must be some mistake about the shipment, and asked the company to ascertain, if possible, the name of the shipper. The Railroad Company acquiesced in that request, telegraphed to its agent at Baltic for the name of the shipper, and on the same day received a telegram answering the inquiry, of which The Seiberling Co. was notified. Neither the agent of the Railroad Company nor Seiberling read the telegrams as giving the name of the shipper, Jerrard Barker or J. Barker, but both supposed the name to be Arker or Archer. This did not' clear up the mistake that Seiberling said existed, and hence the freight was not received. Later, early in January, Mr. Barker came to Akron, and through him it was learned that he had shipped the lumber from Baltic to The J. F. Seiberling Company, and perhaps in pursuance of some understanding, that he had with the company about the shipping of lumber. Immediately on ascertaining this fact, the Seiberling Company notified the Railroad Company that it was ready to receive the lumber, and pay the freight, but the Railroad Company would not deliver the property to Mr. Seiberling unless he paid certain other charges. While this matter was pending between The J. F. Seiberling Company and the Railroad Company, the car was detained for a time by the company, subsequent.^ unloaded, the contents placed in a warehouse, and the claim made by the company that it had a lien upon the freight for the expenses incurred in the detention of the car for eight days, and $4.50 for unloading the car and warehouse charges, and refused to deliver the freight unless these charges as well as the freight were paid. Thereupon, The J. F. Seiberling Company commenced an action in replevin, and the contention in the court below was over the right of the Railroad Company to detain the property until those charges were paid. This claim of the Railroad Company was made upon two grounds:
First — That by the reasonable rules and regulations of the *595 Railroad Company, of which The J. F. Seiberling Company had knowledge, it was entitled to charge one dollar per day, during the time the car was detained after forty-eight hours, from the time notice had been given to the consignee, and for the expense of unloading the car and warehouse charges.
Second — The Railroad Company claimed that the shipper, Jerrard Barker, by express contract with The Cleveland, Canton & Southern Railroad Company, to which the freight was delivered, had agreed that the lumber should be unloaded within forty-eight hours after notice, and if not so unloaded, a reasonable charge per day for the detention of the ear should be paid to the Railroad Company, and any charges for unloading and storage of the lumber, and that the company should have a lien on the freight for all charges thus incurred.
We find no substantial error in this record, in dealing with the first proposition ; that is, the claim founded upon the rule. At least we think there is nothing in the record that would lead us to say that upon that proposition the case was not fairly tried, and fairly submitted to the jury. The instructions seem to us fairly in accordance with the law applicable to that branch of the case; and without noting the specific items, to which attention has been called, I cover the exceptions to this part of the charge with this general statement.
When Barker delivered this lumber to The Cleveland, Canton & Southern Railroad Company, he signed a contract which he delivered to the Railroad Company, a copy of which was retained by him. So far as involved in this controversy, it reads :
“ Baltic (O.) Station, Dec. 22, 1892.
“Received from J. Barker by Cleveland, Canton & Southern Railroad Co. the property described below, in apparent good order, except as noted (contents and condition of contents of package unknown), marked, consigned and destined as indicated below, which said company agrees -to carry to the said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, in consideration of the rate of freight, hereinafter named, as *596 to each carrier of all or any of said property, over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to .be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained, and which are hereby agreed to by the shipper and by him accepted for himself and his assigns as just and reasonable.”
This clause was on the face of the contract followed by the phrase : “ For conditions see other side.”
One of these conditions on the other side reads:
“ 5th. Property not removed by the person or party entitled to receive it, within twenty-four hours after its arrival at destination, may be kept in the car, depot or place of delivery of the carrier, at the sole risk of the owner of said property, or may be, at the option of the carrier, removed and otherwise stored at the owner’s risk and cost and there held subject to lien for all freight and other charges. The delivering carrier may make a reasonable charge per day for the detention of any car and for use of track after the car has been held forty-eight hours for unloading; and may add such charges to all other charges hereunder; and hold said property subject to a lien therefor.”
That, as I say, was signed by Barker and delivered to the Railroad Company. The court, in charging the jury upon that subject, said : “ To constitute a contract in this behalf, it must appear that Barker, at the time he signed the bill of lading, ‘ Exhibit G,’ knew of the printed matter on the back thereof, and assented to it. All valid contracts are matters of the voluntary agreement of the parties, express or implied. The mere fact that Barker signed ‘ Exhibit G,’ would not-bind him to the printed matter on the back thereof, if he had no knowledge of its contents, and did not assent thereto ; but if he signed the same, knowing the contents thereof, and made no objection thereto, he may be presumed to have assented thereto.” And we must decide whether that is the true interpretation of this contract.
We have examined, so far as we are able, the authorities bearing upon this proposition. Wood, in his work on Rail-' *597 way Law, Vol. 3, sec. 425, in a pointed paragraph, that we find largely sustained by the authorities, says : “ In addition to the exemption from liability referred to in the last section, a carrier may by express contract limit its liability, provided the limitation is just and reasonable.” What were the elements of this contract ? The shipper, Barker, agreed to unload the car within forty-eight hours, or pay a reasonable charge for the detention of the car beyond that time; and that the Railroad Company should have a lien, in connection with their claim for freight, for the charges thus incurred. It would seem reasonable that the Railroad Company should have some rule or regulation, or be able to contract in some way, as to when freight should be removed from their cars; and forty-eight hours would seem to be a reasonable time in which to do that. It contravenes no public policy whatever. It was a simple contract between parties capable of contracting. It does not belong to that class of eases, in which it is sought to bind a shipper or a passenger by notice upon a ticket, or a shipping bill, which he has not signed, and of which he has no knowledge. There is a marked difference between that class of eases and the one at bar.
In the case we are considering, the rights of the parties are to be determined by an express contract. It is said in support of the charge that these parties, the shipper and the railroad company, do not stand upon an equality; that the shipper must conform to any requirements that the railroad company may seek to impose upon him, and therefore the rules applicable to the interpretation of other classes of contracts do not apply. There is very little force in this argument. If the railroad company exact unreasonable, unjust or unlawful conditions upon which it will receive freight, the shipper may decline to sign such contract, tender the freight to the common carrier, and if refused, hold the company responsible.
A contract just and reasonable in its terms, not against public policy, between parties competent to contract, cannot be set aside and held for naught because one of the parties to it *598 failed to read or know its contents. Nor does the fact that one of the parties is a common carrier and the other not, change the rule in this respect. The duty is upon both parties to such a contract to know its terms. The fact that a part of this contract appeared upon its face and a part on the back of the paper, and after the signature, has no significance, since there was upon the contract an express reference to the conditions on the back.
It is said that the testimony establishes so clearly, the fact that the Railroad Company waived this condition of the contract as set forth in the reply, that this error in the interpretation of the contract becomes immaterial, and that, notwithstanding the error, the judgment should be affirmed.
He cannot assent to this claim, since there is a conflict in the testimony on this branch of the case. We do not want to be understood as saying that the facts set up in that reply, or appearing in the evidence, would Dot constitute a defense to this claim of the company. We do say, that the case should go to the jury, with the proper interpretation of this contract, and that there should be submitted to them, upon the evidence, the question as to whether there was a waiver, growing out of the facts alleged in that reply. And for this error, and this alone, we feel compelled to reverse the judgment of the court below, and remand it for further proceedings.
I meant to have called attention to one part of the charge, to which we found no specific exception, and as the case is going back for trial, I want to say that in the part of the charge in which the court submitted to the jury -the question as to whether it was reasonable or unreasonable that the Railroad Company should put its business into the hands of the Cleveland Car Service Association, we think was wholly immaterial and foreign to the case. We think that the rights of the parties are to be determined between the Railroad Company and The Seiberling Company, and no matter what agency the Railroad Company employed, if it violated any of those rights, it is to be held responsible to The Seiberling Company. If the *599 Railroad Company does, what it has an undoubted right to do, it is no concern of The Seiberling Company what agencies it employs.
N. B. Tibbals and C. S. Cobbs, for plaintiff in error.
Marvin, Sadler & Atterholt, for defendant in error.